**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

JOSEPH DANIELS, a/k/a Lil Hawk,
　　　　　　*Defendant-Appellant.*

No. 99-4449

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CR-98-23-H)

Argued: April 3, 2002

Decided: June 21, 2002

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and Walter K. STAPLETON, Senior Circuit Judge of the
United States Court of Appeals for the Third Circuit,
sitting by designation.

Affirmed by unpublished opinion. Judge Stapleton wrote the opinion,
in which Chief Judge Wilkinson and Judge Widener joined.

## COUNSEL

**ARGUED:** Milton Gordon Widenhouse, Jr., RUDOLF, MAHER,
WIDENHOUSE & FIALKO, Chapel Hill, North Carolina, for Appellant. Jane J. Jackson, Assistant United States Attorney, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United

States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

STAPLETON, Senior Circuit Judge:

Appellant, Joseph Daniels, was convicted of conspiring to possess with the intent to distribute, and with distributing, cocaine and crack cocaine. *See* 21 U.S.C. § 841(a)(1); 21 U.S.C. § 846. He was sentenced to 292 months in prison and five years of supervised release. Three issues are raised on appeal.

Daniels first challenges the admission at trial of evidence about an episode that led to his arrest in Atlanta, Georgia in 1993. This evidence tended to show that Daniels and three other individuals had arranged to purchase a kilogram of crack cocaine from an undercover agent.

Daniels argues that this evidence was inadmissible under Federal Rule of Evidence 404(b). The Government counters that it was not evidence within the scope of Rule 404(b). Rather it was evidence of the charged conspiracy tending to show the commission of an overt act in furtherance of that conspiracy. We agree.

Evidence of wrongful acts that is probative of the crime charged does not fall within the limitations of Rule 404(b) and is admissible subject to other evidentiary constraints such as relevancy. *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990). If a prior act is relevant to prove involvement in a charged conspiracy and is not offered to prove character, Rule 404(b) is not applicable and the prior act is admissible. *United States v. Dozie*, 27 F.3d 95, 97 (4th Cir. 1994).

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence." The evidence Daniels here challenges tended to make it more probable that Daniels went to Atlanta to secure crack cocaine for distribution by the charged conspiracy in North Carolina.

The arrest occurred on February 12, 1993, which is within the dates of the charged conspiracy, January 1, 1992 to July 28, 1998. Lonnie Earl Crandall, Daniels's alleged co-conspirator, testified that Daniels suggested that they go together to Atlanta to secure drugs. Because Crandall was unable to go, Daniels went with the three individuals with whom he was arrested. When Daniels returned to North Carolina, he told Crandall that he had been arrested before he was able to buy the crack cocaine. The undercover agent involved in the transaction testified that Daniels was present when it took place and that one of the four individuals arrested told him that Daniels was a knowing participant in the attempted purchase. Daniels also told Curtis Guilford, another co-conspirator, that he was going to Atlanta to get drugs. There was also evidence that Daniels, around the time of his arrest in Atlanta, began looking for drug sources for the conspiracy outside of North Carolina. After the Atlanta arrests, Daniels began sending people to New York to purchase drugs.

Daniels argues that the Atlanta transaction did not have anything to do with the conspiracy charge between Daniels and Crandall and places great weight on his own trial testimony and that of another participant in the transaction that, while present, Daniels had no knowledge that a drug transaction was about to occur. This was, of course, an appropriate argument for Daniels to make to the jury, but the jury was not compelled to accept it. The arrest remained relevant despite the evidence Daniels stressed and the jury was entitled to conclude, based on that evidence, that the Atlanta transaction was a part of the charged conspiracy.

Daniels next argues that the jury's verdict was ambiguous as to which drug, crack cocaine or powder cocaine, was the object of the conspiracy. As a result of this alleged ambiguity, Daniels contends that he must be sentenced based on the drug carrying the lower statutory penalty, which is powder cocaine. He bases his argument on the

Fourth Circuit's holdings in *United States v. Rhynes*, 196 F.3d 207 (4th Cir. 1999), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000), *United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975), and *United States v. Lewis*, 2000 WL 1390065 (4th Cir. 2000).

This claim is reviewed for plain error because Daniels did not assert it in the District Court. *United States v. Bowens*, 224 F.3d 302, 314-15 (4th Cir. 2000). Under this standard, Daniels must show (1) "an 'error,' (2) that is 'plain' and, (3) that 'affects[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 467.

The indictment charged Daniels with conspiracy to possess with the intent to distribute, and with distributing, cocaine *and* crack cocaine. Accordingly, the District Court instructed the jury that Daniels was charged in the indictment with conspiring to possess with intent to distribute, and with distributing, both cocaine *and* crack cocaine. It further charged the jury that in order to find Daniels guilty it must find beyond a reasonable doubt "that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan *as charged in the indictment . . . .*" JA 1153.

The jury's verdict was not ambiguous with regard to which drug was the object of the conspiracy. As in *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001), *rev'd on other grounds*, 122 S.Ct. 1781 (2002), it was clear from the indictment and the jury instructions that the charged conspiracy involved plans to possess and distribute both forms of cocaine. The Court instructed the jury in unambiguous terms that a conspiracy conviction could be based only upon a finding that there was a conspiracy to distribute both powder cocaine and crack cocaine, *see Cotton*, 261 F.3d at 402-03, and the evidence was sufficient to support a finding that Daniels conspired to distribute both. There is no reason to believe that the jury failed to follow the instructions it was given. The jury's verdict of guilty thus clearly evidences

a conclusion beyond a reasonable doubt that both powder cocaine and crack cocaine were objects of the conspiracy.

This case is distinguishable from *Rhynes*. In *Rhynes*, the jury was instructed that it could find the defendant guilty if it found that the defendant had conspired "to distribute or possess with intent to distribute heroin, *or* cocaine, *or* cocaine base *or* marijuana." 196 F.3d at 237. Because the different drugs were connected in the disjunctive, it was impossible for the court to determine on which statutory object or objects the jury's verdict was based.

Daniels's final argument concerns his sentence of 292 months. The maximum sentence for the distribution of an unspecified quantity of cocaine or cocaine base is 240 months. 21 U.S.C. § 841(b)(1)(C). The jury was not asked to make a finding as to the amount of powder or crack cocaine involved in the conspiracy. Daniels was sentenced, however, for an aggravated drug trafficking offense based upon the trial judge's finding that at least 1.5 kilograms of crack were distributed in the course of the conspiracy. As a result, Daniels insists that his sentence is invalid under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This argument was not raised in the District Court, and therefore, must meet the plain error standard we have previously discussed.

The Government concedes that under *Apprendi* the District Court erred by sentencing Daniels to more than 240 months in the absence of a jury determination that his offense involved the threshold amount necessary to support such a sentence. It further concedes that this error is "plain" in light of *Apprendi*. Relying on the Supreme Court's recent decision in *United States v. Cotton*, 122 S.Ct. 1781 (2002), however, the government maintains that no relief is appropriate because the error did not seriously affect the fairness, integrity or public reputation of the proceedings.

In *Cotton*, the Court was also faced with a situation in which the trial court, without a contemporaneous objection, had imposed drug conspiracy sentences of over 240 months without a jury finding concerning the quantity of the drugs involved. When applying the plain error standard, the Court declined to address whether such an error affected the substantial rights of the defendants. Rather, the Court held that even if the defendant's substantial rights are affected, such

an error does not seriously affect the fairness, integrity or public reputation of judicial proceedings so long as the evidence of the requisite drug quantity is "overwhelming" and "essentially uncontroverted." In such a situation, "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings' would be if [defendants], despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial offenses because of an error that was never objected to at trial." *Id.* at 1787.

The evidence regarding the quantity of drugs involved in this six and one-half year conspiracy, like that in *Cotton*, was overwhelming and essentially uncontroverted and supports Daniels's sentence. Lonnie Earl Crandall testified that Fruit (or Tutti) made numerous trips to New York to buy crack cocaine for himself and Daniels. On each of these trips, Fruit would buy half a kilogram or a full kilogram of crack cocaine. Crandall and Milton Jones brought back from New York two kilograms of crack cocaine on one trip alone. Jones was arrested on another occasion with two kilograms of cocaine and crack cocaine that he was transporting for Daniels. Terrell Sneed also testified that he made two trips to New York for Daniels. On each of these trips he transported 250 grams of cocaine and 250 grams of crack.

Based on this uncontroverted evidence, the presentence investigation report recommended a base level of 38, observing that the "information presented by the government at trial, and affirmed by the jury's verdict of guilty, establishes that the defendant should be held accountable for the distribution of well in excess of 1.5 kilograms of crack cocaine." App. 1199. Significantly, while Daniels's Objections to Presentence Investigation Report objected to being held accountable for "in excess of 1.5 kilograms of crack cocaine," he did not object to being held accountable for 1.5 kilograms of crack cocaine, the amount necessary to support his sentence. As we have noted, the trial judge, at the sentencing hearing, found that the conspiracy had involved at least 1.5 kilograms of crack. He went on to note, however, that the evidence would support a finding of far in excess of that amount.

The absence of a jury finding that Daniels's conspiracy involved at least 1.5 kilograms of crack cocaine does not impair the fairness,

integrity or public reputation of the proceeding that we here review. To the contrary, as in *Cotton*, the record here is such that vacating his sentence because of the absence of such a finding would pose a "real threat . . . to the 'fairness, integrity, and public reputation of'" those proceedings.

Daniels's conviction and sentence will be affirmed.

*AFFIRMED*