**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 03-4511

OWEN ROBINSON, a/k/a Heavy,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 03-4518

KENDALL SCHUYLER, a/k/a Sleepy,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 03-4519

WILLIAM M. PARROS,
*Defendant-Appellant.*

On Remand from the Supreme Court of the United States.
(S. Ct. No. 04-9095)

Argued: February 3, 2006

Decided: August 9, 2006

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Motz joined. Judge Niemeyer wrote an opinion concurring in the judgment.

---

**COUNSEL**

**ARGUED:** Gary Allen Ticknor, Elkridge, Maryland, for Appellants. Robert Reeves Harding, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** G. Godwin Oyewole, Washington, D.C., for Appellant Owen Robinson; Gerald Durand Glass, Towson, Maryland, for Appellant William M. Parros. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Defendants Owen Robinson, Kendall Schuyler, and William Parros (collectively, the "Defendants") have appealed the sentences imposed on them in 2003 in the District of Maryland. This is the third separate occasion for our Court to review sentences the Defendants received on their jury convictions in 1999 for various offenses relating to a large drug trafficking conspiracy, centered in the area of Baltimore, Maryland. The district court initially sentenced the Defendants in March 2000: Robinson and Schuyler each received life in prison, and Parros received thirty years. The Defendants promptly appealed their sentences to this Court (the "First Appeals") and, in November 2001, we vacated and remanded for resentencing under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See United States v. Johnson*, No. 03-4511, 2001 WL 1349205, at *3 (4th Cir. Nov. 2, 2001) (hereinafter "*Robinson I*"). The Defendants were resentenced by the district court in May 2003, and they thereafter again appealed their sentences to this Court (the "Second Appeals"). By opinion filed in December 2004, we rejected their new contentions of sentencing error and affirmed their 2003 sentences. *See United States v. Robinson*, 390 F.3d 833, 838 (4th Cir. 2004) (hereinafter "*Robinson II*"). In January

2005, the Supreme Court issued its landmark sentencing decision in *United States v. Booker*, 543 U.S. 220 (2005). Subsequently, in April 2005, the Court granted the Defendants' petitions for certiorari, vacated our decision in *Robinson II*, and remanded the Second Appeals for further consideration in light of *Booker*. *See Robinson v. United States*, 544 U.S. 971-72 (2005) (mem.).

In *Booker*, the Court held, inter alia, that a sentencing court commits Sixth Amendment error if it engages in judicial factfinding, under mandatory Sentencing Guidelines, that results in a sentence exceeding the maximum term authorized by the jury verdict alone. *See* 543 U.S. at 245-46. As explained below, we reject the contention that the Defendants' constitutional *Booker* claims are subject to plain error review. The Defendants properly preserved their claims of Sixth Amendment *Booker* error at their resentencing proceedings in 2003 by raising timely objections under *Apprendi*, and their contentions here are subject to review for harmless error. And because the district court committed constitutional *Booker* error in its 2003 resentencing proceedings, and that error was not harmless beyond a reasonable doubt, we are obliged to vacate the Defendants' 2003 sentences and remand.

I.

A.

On November 23, 1999, a jury in the District of Maryland convicted the Defendants and three of their co-defendants of various drug-related offenses, including conspiracy to distribute cocaine base (commonly known as "crack cocaine"), in violation of 21 U.S.C. § 846. *See Robinson I*, No. 03-4511, 2001 WL 1349205, at *1 (4th Cir. Nov. 2, 2001). The essential facts underlying the Defendants' convictions were summarized by us in *Robinson I* as follows:

> [The Defendants] are former members of a drug trafficking conspiracy based predominantly in the O'Donnell Heights area of southeast Baltimore. That conspiracy . . . distributed primarily cocaine base, but also sold powder cocaine, heroin, and marijuana. At the height of the conspiracy, [the Defendants] required weekly trips to New York to obtain

> kilogram quantities of powder cocaine, which they would
> cook into cocaine base, in order to supply their operation.
> The volume and profit of the organization was matched by
> its ruthlessness, however, as at least two individuals were
> killed as part of the organization's attempt to secure control
> over its areas of distribution.

*Id.* In addition to finding each of the Defendants guilty of conspiracy to distribute crack cocaine, in contravention of § 846, the jury convicted Robinson on a separate count of possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and Schuyler for carrying a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

At the Defendants' initial sentencing proceedings, conducted in March 2000, the district court determined that each of the Defendants' criminal activity involved 1.5 kilograms or more of cocaine base, and thus assigned each of them a base offense level of 38 under the then-mandatory Sentencing Guidelines. With respect to Robinson, the court enhanced his offense level an additional two levels for possession of a firearm, *see* USSG § 2D1.1(b)(1) (1999), two levels for his leadership role in the offense, *see id.* § 3B1.1(c), and two levels for obstructing justice by committing perjury at trial, *see id.* § 3C1.1, for a total of six enhancement levels. The court sentenced Robinson to life in prison for his § 846 conspiracy conviction, and to a separate concurrent life sentence for his § 841 conviction. With respect to Schuyler, the court applied a two-level enhancement for his leadership role in the offense, *see* USSG § 3B1.1(c), plus a two-level enhancement for obstruction of justice, *see id.* § 3C1.1, for a total of four enhancement levels. The court also applied the murder cross-reference against Schuyler, which carries a mandatory life sentence, for his having possessed a firearm that had been used in a murder carried out by a co-defendant. *See id.* §§ 2A1.1, 2D1.1(d). As a result, the court imposed a life sentence on Schuyler for his § 846 conspiracy conviction, plus a consecutive sentence of five years for his § 924(c) conviction. With respect to Parros, the court imposed a sentence of thirty years for his § 846 conspiracy conviction.

After the Defendants noted their First Appeals to this Court, but before they filed appellate briefs, the Supreme Court rendered its

decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that the Sixth Amendment requires that any fact, other than a prior conviction, that "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

In their First Appeals, the Defendants asserted, as relevant here, that their sentences had been imposed in contravention of *Apprendi*, in that they each exceeded the applicable statutory maximum. These assertions were premised on the fact that the indictment did not allege, and the jury had not found, any of the threshold drug quantities necessary to authorize the sentences imposed.[1] As the Defendants had not asserted *Apprendi*-type error during their initial sentencing proceedings, and they had been sentenced prior to *Apprendi* being decided, we reviewed their sentencing contentions in *Robinson I* for plain error only. *See* 2001 WL 1349205, at *2. As we explained there, "[u]nder § 841(b)(1)(C), a defendant whose indictment for a violation of § 841(a) does not describe the quantities of drugs involved may receive a [maximum] sentence of twenty years," or "a maximum of thirty years where the defendant has one or more prior felony convictions." *Id.* The Defendants had each received sentences in March 2000 in excess of the relevant statutory maximums. *Id.* at *3. In addressing their contentions in the First Appeals, we concluded in *Robinson I* that

> [t]he life sentences imposed on Schuyler and Robinson are in excess of the thirty-year statutory maximum[2] . . . demon-

---

[1]Under the drug conspiracy statute codified in § 846, a defendant convicted under that section "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Because the Defendants were convicted of conspiracy to distribute an indeterminate amount of cocaine base, in violation of § 841(a), the applicable penalties are found in § 841(b)(1)(C). Under that provision, the maximum authorized penalties are a term of imprisonment of twenty years, or, if a defendant has a prior conviction for a felony drug offense, thirty years, subject to appropriate notice of the Government's intention to use such a prior conviction to enhance a sentence being provided pursuant to § 851.

[2]We note that, prior to Schuyler's 2003 resentencing hearing, the Government submitted a sentencing memorandum to the district court conceding that the statutory maximum for his § 846 conspiracy conviction was twenty years, in that it had failed to properly serve Schuyler with notice under § 851.

strating error that is plain. . . . Likewise, because the Government did not include Parros in its pre-trial § 851 information, only the twenty-year maximum of § 841(b)(1)(C) was authorized as to him. *See* § 851. With respect to the third prong of the plain error inquiry, we have found that a sentence in excess of the authorized statutory maximum to which a defendant would not otherwise be subject affects his substantial rights. *Id.* Finally, we recently determined that where the sentence imposed is defective due to a fatal error in the indictment, as is the case here, this court should notice that error. *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001).

*Id.* at *3. Under the rationale of our *Cotton* decision, on which we relied in *Robinson I*, the Defendants' sentences in excess of the statutory maximums constituted plain error requiring correction on appeal, because such error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Cotton*, 261 F.3d at 406. Accordingly, in disposing of their First Appeals, we vacated the sentences imposed on the Defendants in 2000 and remanded for resentencing at or below the relevant statutory maximums, as established by § 841(b)(1)(C). *See Robinson I*, 2001 WL 1349205, at *3.

### B.

While the Defendants were awaiting resentencing in the district court following our remand in *Robinson I*, the Supreme Court granted certiorari in *Cotton*, and the district court postponed the Defendants' resentencing proceedings pending the Court's decision. Ultimately, the Supreme Court reversed our decision in *Cotton*, holding that an unpreserved *Apprendi* error need not be corrected on plain error appellate review if the trial evidence of the allegations missing from the indictment was "overwhelming" and "essentially uncontroverted." *United States v. Cotton*, 535 U.S. 625, 633 (2002) (citation omitted).

The Defendants were resentenced in the district court on May 23, 2003. At their resentencing proceedings, each of them asserted that, under *Apprendi*, their sentences could not be enhanced based on facts found by the court, rather than the jury. *See* J.A. 195 (Schuyler asserted in his 2003 sentencing memorandum that, under *Apprendi*,

he is "entitled to a jury determination" of drug quantity "beyond a reasonable doubt," rather than judicial factfinding (internal quotation marks omitted)); J.A. 240-43, 255-56 (Schuyler maintained at 2003 sentencing hearing that jury had not determined drug quantity, as required for enhanced sentence under *Apprendi*); J.A. 203-06 (Parros adopted Schuyler's sentencing memorandum and asserted at 2003 hearing that jury did not find quantity of drugs necessary for enhanced sentence); J.A. 276-77 (Robinson contended at hearing that jury did not determine requisite drug quantities for enhanced sentence).[3] The district court overruled the Defendants' *Apprendi* contentions, and, in reliance on the Court's reasoning in *Cotton*, found that the trial evidence of drug quantities was overwhelming and uncontroverted. The court further found that each of the Defendants was responsible for at least fifty grams of cocaine base, and that their conspiracy involved "distributing more than 1.5 kilograms of crack cocaine." J.A. 266. Accordingly, in May 2003, the court resentenced the Defendants to the identical sentences it had imposed in 2000.

## C.

In June 2003, by way of their Second Appeals, the Defendants challenged their 2003 sentences, contending, as relevant here, that the district court had erred in dismissing their *Apprendi* objections, and that the evidence against them was neither overwhelming nor uncontroverted. The Defendants also sought relief (by way of a supplemental brief) under the new authority of *Blakely v. Washington*, 542 U.S. 296 (2004), where the Court held that the Sixth Amendment was contravened by mandatory state sentencing procedures that permitted the use of judicial factfinding to increase sentence maximums.[4] By our

---

[3]Our citations to "J.A. __" refer to the contents of the Joint Appendix, filed by the parties in these appeals.

[4]The *Blakely* decision had not been issued by the Supreme Court when the Defendants filed briefs in the Second Appeals in October 2003. After *Blakely* was decided on June 24, 2004, the Defendants sought and received leave to file a supplemental brief raising their *Blakely* contentions. We rejected their claims under *Blakely* in a separate order, issued on August 18, 2004, pursuant to our decision in *United States v. Hammoud*, 381 F.3d 316, 353 (4th Cir. 2004) (en banc) (holding that *Blakely* did not apply to Guidelines). *Hammoud* was subsequently overruled by *Booker*.

decision in *Robinson II*, filed on December 13, 2004, we rejected the Defendants' *Apprendi* contentions in the Second Appeals and affirmed the district court's 2003 sentences. *See* 390 F.3d 833, 838 (4th Cir. 2004).[5]

Soon thereafter, on January 12, 2005, the Supreme Court issued its decision in *United States v. Booker*, utilizing the principles of *Apprendi* to invalidate the mandatory Sentencing Guidelines under which the Defendants were resentenced in 2003. *See* 543 U.S. 220, 244 (2005). In order to cure the Guidelines' constitutional infirmity, the Court excised the statutory provisions making the Guidelines mandatory, thereby rendering them advisory only. *Id.* at 245. The principles of *Booker* were then to be applied to all cases on direct review. *Id.* at 268. On April 18, 2005, the Court granted the Defendants' petitions for certiorari, and vacated and remanded our decision in the Second Appeals in *Robinson II* "for further consideration in light of [*Booker*]." *Robinson v. United States*, 544 U.S. 971-72 (2005) (mem.). Accordingly, the Defendants' sentences are now before us for the third time.

---

[5]In *Robinson II*, we incorrectly asserted, as a factual matter, that the Defendants had not objected on *Apprendi* grounds to their 2003 sentences. *See* 390 F.3d 833, 837 (4th Cir. 2004). And, based on our misapprehension of the facts, we analyzed their *Apprendi* claims in the Second Appeals for plain error. *Id.* Our decision in *Robinson II* has since been vacated by the Supreme Court and is no longer controlling. *See Amelkin v. McClure*, 330 F.3d 822, 828 (6th Cir. 2003) (recognizing that decision vacated by Supreme Court is not controlling). Having now recognized that the Defendants properly objected at their 2003 resentencing proceedings, moreover, it would be unjust for us to repeat such a factual error. *See, e.g.*, *United States v. Noble*, 299 F.3d 907, 910 (7th Cir. 2002) (reversing previous decision "[i]n light of this panel's mistake" on factual issue that revealed panel's "earlier holding was wrong"). As aptly observed by John Adams, during his defense of British soldiers charged with the Boston Massacre, "[f]acts are stubborn things . . . and whatever may be our wishes, our inclinations, or the dictums of our passions, they cannot alter the state of facts and evidence." David McCullough, *John Adams* 52 (Simon & Schuster 2001).

## II.

In the present proceedings, on remand from the Supreme Court, the Defendants contend that the sentencing court committed Sixth Amendment *Booker* error in imposing their 2003 sentences. The Defendants assert that these sentences were impermissibly based upon quantities of drugs, found by the sentencing judge only, which were neither charged in the indictment nor proven to the jury beyond a reasonable doubt. We begin by ascertaining the applicable standard of review.

In a criminal appeal, the appropriate standard of review generally depends upon whether an appellant has properly preserved a claim of error by asserting a timely objection in the court below — that is, whether the error was "brought to the [district] court's attention." Fed. R. Crim. P. 52(b). If an appellant has timely objected, his assertion of error has been preserved, and we are obliged to apply the "harmless error" standard provided by Federal Rule of Criminal Procedure 52(a). *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under the harmless error standard, "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). If an appellant failed to timely object to an alleged error, however, we are obliged to apply the "plain error" standard set forth in Rule 52(b). *See Olano*, 507 U.S. at 731. Under the plain error standard, a court of appeals may correct (1) an error, (2) that is plain, and (3) that affects a defendant's substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 732; *United States v. Rodriguez*, 433 F.3d 411, 414-15 (4th Cir. 2006). Although subsections (a) and (b) of Rule 52 contemplate the same inquiry into an error's effect on substantial rights, an appellant on plain error review bears the burden of persuasion with respect to prejudice. *See Rodriguez*, 433 F.3d at 416. Under harmless error review, however, it is the Government that bears the burden of establishing that error was harmless. *See id.* Thus, we must, as a threshold matter, ascertain whether the constitutional *Booker* error now complained of by the Defendants was properly preserved in the district court.

As we have recognized, a defendant who was sentenced prior to the Court's 2005 *Booker* decision has properly preserved a claim of

*Booker* error if he "plainly notified the court of his position that he was being sentenced illegally, and he identified the line of Supreme Court precedent upon which he now relies." *Rodriguez*, 433 F.3d at 416 (recognizing that claim of statutory *Booker* error has been preserved by raising timely *Blakely* objection at sentencing). Thus, by objecting at sentencing under the rationale of *Apprendi*, the primary precedent upon which *Booker* relied, a defendant has properly preserved a claim of *Booker* error. *See United States v. Sullivan*, __ F.3d __, No. 03-4601, slip op. at 26 (4th Cir. July 11, 2006) (King, J., concurring) (concluding for panel majority that defendants preserved statutory *Booker* error by objecting on basis of *Apprendi* at sentencing); *see also United States v. Antonakopoulos*, 399 F.3d 68, 76 (1st Cir. 2005) (recognizing that *Booker* error is preserved if defendant below asserted *Apprendi* error); *United States v. Tupone*, 442 F.3d 145, 157 (3d Cir. 2006) (same).

Here, the Defendants interposed no objections at their sentencing proceedings in March 2000 on the basis of *Apprendi* or *Blakely*, because the Supreme Court had not yet rendered either of those decisions.[6] Thus, in *Robinson I*, we were obliged to review the Defendants' contentions of *Apprendi* error regarding their 2000 sentences for plain error. *See* No. 03-4511, 2001 WL 1349205, at *2 (4th Cir. Nov. 2, 2001). In these appeals, however, we are reviewing their 2003 sentences imposed by the district court at the Defendants' resentencing proceedings. And, in those proceedings, each Defendant objected, under *Apprendi*, to the judicial factfinding utilized in their 2003 sentencing proceedings. Thus, each Defendant "plainly notified the court of his position that he was being sentenced illegally, and [ ] identified the line of Supreme Court precedent upon which he now relies." *See Rodriguez*, 433 F.3d at 416. Accordingly, the Defendants have properly preserved their claims of Sixth Amendment *Booker* error regarding their 2003 sentences, and we are now obliged to review their *Booker* contentions for harmless error.[7]

---

[6]The Defendants were initially sentenced in March 2000, and *Apprendi* was decided on June 26, 2000. They were resentenced in May 2003, and *Blakely* was decided on June 24, 2004.

[7]To be sure, the parties have assumed and asserted in the Second Appeals that the Defendants' contentions on their 2003 sentences should

### III.

The Defendants contend that the district court committed Sixth Amendment *Booker* error in predicating their 2003 sentences upon quantities of cocaine base found by the sentencing judge only, which were neither charged in the indictment nor proven to the jury beyond a reasonable doubt. The Government contends, on the other hand, that the Defendants' sentences should be affirmed because any *Booker* error committed in the 2003 resentencing proceedings was harmless, and because the evidence of the drug quantities involved was both overwhelming and uncontroverted.

In assessing a contention of Sixth Amendment *Booker* error under harmless error review, we are obliged to determine (1) whether such an error occurred, and (2) if so, whether it affected the defendant's substantial rights. *See United States v. Shatley*, 448 F.3d 264, 266-67 (4th Cir. 2006). As we have recently explained, a sentencing court has committed Sixth Amendment error when, "operating under a pre-*Booker* mandatory guidelines regime," it has engaged in judicial fact-finding resulting in a sentence that "exceeds the maximum guideline sentence authorized by the jury verdict alone." *United States v. Smith*, 441 F.3d 254, 271 (4th Cir. 2006) (citing *United States v. Hughes*, 401 F.3d 540, 547-49 (4th Cir. 2005)). And such a Sixth Amendment error affects a defendant's substantial rights unless the Government can "prove beyond a reasonable doubt" that the error was harmless —

---

be reviewed by us for plain error. We are not, however, bound by the parties' views of such an issue, particularly when those views conflict with the facts or the law. "[O]ur judicial obligations compel us to examine independently the errors confessed." *Young v. United States*, 315 U.S. 257, 258-59 (1942); *see also United States v. Mackins*, 315 F.3d 399, 406 & n.3 (4th Cir. 2003) (engaging in extended assessment of proper standard of review even though defense counsel assumed that review was for plain error); *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc) ("The parties' failure to brief and argue properly the appropriate standard may lead the court to choose the wrong standard. But no party has the power to *control* our standard of review."); 5 C.J.S. Appeal and Error § 748 ("[C]oncession of a point on appeal is by no means dispositive of a legal issue.").

that is, that "the court would have imposed the same sentence in the absence of the constitutional error." *See Shatley*, 448 F.3d at 267.

In resentencing the Defendants in May 2003, the district court found each of the Defendants to be responsible for at least fifty grams of cocaine base, and also found that their conspiracy involved "distributing more than 1.5 kilograms of crack cocaine." J.A. 266. Having found that "overwhelming" and "uncontroverted" evidence supported the sentences it had imposed in March 2000, the court reimposed the same sentences on the Defendants. Based solely on its findings on drug quantities, the court increased each of the Defendants' base offense levels from 12 (the applicable offense level for an indeterminate quantity of cocaine base) to 38. Moreover, the court enhanced the Defendants' various sentences based on findings regarding such factual issues as leadership role, obstruction of justice, possession of a firearm, and responsibility for an uncharged murder. Absent this judicial factfinding, the maximum sentences the Defendants could have received under the Guidelines would have been less than those actually imposed.[8] Thus, the Defendants have sufficiently established that Sixth Amendment *Booker* error occurred with respect to their 2003 sentences, and they are entitled to relief unless the Government can prove beyond a reasonable doubt that they would have received the same sentences absent the Sixth Amendment error. And, as explained below, the Government is unable to make such a showing here.

First, the Government maintains that the district court can (and likely will) impose the same sentences on remand, under an advisory Guidelines regime, because it has already sentenced the Defendants to their respective sentences on two separate occasions. As we have heretofore explained, however, whether a court, on remand, may impose the same sentence under an advisory Guidelines regime is irrelevant to the assessment of a Sixth Amendment error's effect on a defendant's substantial rights. *See Hughes*, 401 F.3d at 552 (recognizing that possibility that defendant will receive same sentence under

---

[8]Under the Guidelines, absent any judicial factfinding, the base offense level of 12 would have resulted in the following maximum potential sentences under § 846: Robinson (27 months); Schuyler (33 months); and Parros (37 months).

*Booker* remedial scheme of advisory Guidelines is not relevant to assessment of whether defendant has demonstrated prejudice from Sixth Amendment violation).[9]

Second, the Government contends that two of the Defendants — Parros and Schuyler — would have received the same sentences absent the Sixth Amendment *Booker* error. With respect to Parros, the Government maintains that he would have received the same sentence because he was designated in the presentence report (the "PSR") as a career offender. In resentencing Parros in 2003, however, the court made no mention of sentencing him as a career offender. Rather, the court explicitly based Parros's sentence upon its finding of a drug quantity (1.5 kilograms of cocaine base) corresponding to an offense level of 38. *See* J.A. 209. In any event, even if Parros were sentenced as a career offender, as the Government would have it, his maximum Guidelines sentence would have been 327 months, less than the 360 months (thirty years) imposed on him in 2003. Thus, even if Parros could have been sentenced as a career offender, that fact would not render the court's Sixth Amendment error harmless.

The Government also contends that Schuyler would have received a life sentence, absent the Sixth Amendment error, because the cross-reference for murder, pursuant to USSG §§ 2A1.1, 2D1.1(d) (2002), carries a mandatory sentence of life. In finding Schuyler guilty of the illegal possession of a firearm, however, the jury did not thereby also find that he had committed a murder. The application of the murder cross-reference to Schuyler was thus predicated upon judicial fact-finding and, because it increased Schuyler's sentence above the Guidelines maximum otherwise authorized by the jury's verdict, it also contravened *Booker*. *See United States v. Gray*, 405 F.3d 227, 243-44 (4th Cir. 2005) (recognizing Sixth Amendment error where judicial factfinding increased sentence by way of murder cross-

---

[9]We recently recognized, in *United States v. Shatley*, that the Government carries its burden of demonstrating that a constitutional *Booker* error is harmless beyond a reasonable doubt where "the district court announced an alternative nonguideline sentence under 18 U.S.C. § 3553(a) identical to the Guidelines sentence." *See* 448 F.3d at 267. Because the court announced no such alternative sentences in the 2003 resentencing proceedings, *Shatley* is inapplicable here.

reference). Thus, far from rendering the sentencing court's *Booker* error harmless as to Schuyler, application of the murder cross-reference in his 2003 sentencing constituted Sixth Amendment error as well.

Finally, the Government maintains, in reliance on the Supreme Court's holding in *United States v. Cotton*, 535 U.S. 625 (2002), that we should disregard the Sixth Amendment *Booker* error in the Defendants' 2003 resentencing proceedings because the evidence regarding the drug quantities involved in their conspiracy was both "overwhelming" and "uncontroverted." The *Cotton* principles, however, are applicable only on plain error review, and we are reviewing the Defendants' 2003 sentences for harmless error. *See United States v. Smith*, 441 F.3d 254 (4th Cir. 2006) (applying *Cotton* principles to *Booker* claim on plain error review). Thus, because *Cotton* is inapplicable here, this final contention also fails.[10]

The Government is thus unable to meet its burden of establishing that the constitutional *Booker* errors in the Defendants' 2003 resentencing proceedings were harmless beyond a reasonable doubt. As a result, their 2003 sentences must be vacated, and we are obliged to remand for resentencing. *See Hughes*, 401 F.3d at 546.[11]

---

[10]Just as *Cotton* does not apply to our review of the Defendants' 2003 sentences, the district court erroneously applied *Cotton* when imposing those sentences. As explained above, each of the Defendants interposed objections under *Apprendi*, thus preserving their claims of Sixth Amendment error. We note that the district court erroneously applied *Cotton* when resentencing the defendants in 2003. The *Cotton* holding applies only to *appellate* standards of review; it has no bearing on a district court's resentencing decision. Thus, on remand, the district court should resentence the Defendants at or below their relevant statutory maximums, as established solely by the facts alleged in the indictment and found by the jury.

[11]In their supplemental briefs, submitted to us following remand from the Supreme Court, the Defendants advance an additional contention raised in *Robinson II* — that, under the "mandate rule," the district court lacked any authority to postpone their resentencing proceedings to await a Supreme Court decision. We rejected that contention in *Robinson II*, and we are content to do so again here.

IV.

Pursuant to the foregoing, we vacate the Defendants' sentences and remand for such other and further resentencing proceedings as may be appropriate.

*VACATED AND REMANDED*

NIEMEYER, Circuit Judge, concurring in the judgment:

While I concur in the judgment remanding this case for resentencing, I cannot concur in the majority's reasoning in applying the harmless error standard.

Because the defendants were tried, convicted, and sentenced without preserving an *Apprendi/Booker*\* Sixth Amendment error by making a timely objection at trial, *see* Fed. R. Crim. P. 51, they forfeited their objection except to the extent that they are able to persuade us to review the error under the plain error doctrine, *see United States v. Olano*, 507 U.S. 725 (1993). In *Olano*, the Supreme Court noted:

> No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.

*Id.* at 731 (internal quotation marks and citation omitted). Such forfeited rights, however, may be reviewed in "limited" circumstances as provided by Federal Rule of Criminal Procedure 52(b). *Id.* at 731-32.

In this case, the defendants did not — indeed could not — assert and therefore preserve their *Apprendi/Booker* Sixth Amendment objection during trial because neither *Apprendi* nor *Booker* had then been decided. The trial took place in November 1999, and sentencing took place in March 2000. Thus, the trial and sentencing were con-

---

\**See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *United States v. Booker*, 543 U.S. 220 (2005).

ducted in conformity with then-existing understandings of the Sixth Amendment's requirements — the jury determined that the defendants trafficked in drugs in violation of 28 U.S.C. § 841(a), and the district court determined that the drug quantities involved exposed the defendants to sentences longer than 20 years' imprisonment, as provided by 20 U.S.C. § 841(b). In accordance with this procedure, Robinson was sentenced to two life sentences, to run concurrently; Schuyler was sentenced to life imprisonment plus 60 months; and Parros was sentenced to 360 months' imprisonment. Because the defendants failed, *during those proceedings*, to object to the error in procedure that the court, not the jury, was making drug-quantity findings, the defendants forfeited their right to object to the error. Accordingly, appellate review thereafter had to be conducted under Federal Rule of Criminal Procedure 52(b) for plain error, if at all. *See Olano*, 507 U.S. at 731-32.

The proceedings that have followed entry of judgment in this case have involved solely the efforts of the district court and this court to review the district court's original sentences and resentences in light of the newly emerging principles of *Apprendi* and *Booker*. On the defendants' first appeal, we noticed plain error under *Apprendi* and remanded for resentencing. *See United States v. Johnson*, 26 Fed. Appx. 111 (4th Cir. 2001). On the defendants' second appeal, we affirmed the defendants' sentences, relying on the plain error doctrine as applied in *United States v. Cotton*, 535 U.S. 625 (2002). *See United States v. Robinson*, 390 F.3d 833, 838 (4th Cir. 2004). Finally, the Supreme Court granted certiorari, vacated our last decision, and remanded to us to consider the sentences in light of its intervening decision in *United States v. Booker*, 543 U.S. 220 (2005). *See Robinson v. United States*, 544 U.S. 971 (2005). All of these proceedings have been efforts to correct the Sixth Amendment error that had not been objected to at trial but which we noted as plain error.

To suggest now for the first time that our standard of review must be the harmless error standard is shocking — indeed, no party has even challenged the application of plain error review. The error was originally forfeited at least as early as sentencing in March 2000 and then noticed by us under the plain error doctrine. To review it now under harmless error implies that the objection was made when the error could have been corrected. *See United States v. Hubbard*, 603

F.2d 137, 142 (10th Cir. 1979) (objections to error must be presented to the trial judge so as not to deprive the judge and opposing counsel the opportunity to take corrective action); *United States v. Woodner*, 317 F.2d 649, 651-52 (2d Cir. 1963) (objection to error must be made "while there is still time to rectify the asserted error"). But the objection was not timely made. The defendants objected *after* sentencing and have merely reiterated their objection at every turn, including at resentencing and on appeal.

Of course, to apply a harmless error standard now has significant implications — it shifts the burden from the defendants to show prejudice to the government to show the absence of prejudice. *See Olano*, 507 U.S. at 741. If the error had not been forfeited, the government might have been able to avoid the error by presenting evidence of drug quantities to the jury for determination. This is, at bottom, the motivation for making distinctions between plain error and harmless error — to avoid prejudicing a party who acted in conformity with the law as it existed at the time. So it is manifestly unfair now to impose on the government the burden to demonstrate an absence of prejudice from its failure to make a showing that it never had a chance to make. Because the defendants' objections came too late, "[t]his is a plain-error case," and will always be a plain-error case, so "it is [the defendants] who must persuade the appellate court that the deviation from [the Sixth Amendment] was prejudicial." *Id.*

The majority argues that, because the defendants raised *Apprendi* at their resentencing and cited *Blakely v. Washington*, 542 U.S. 296 (2004), during their second appeal to assert the *Apprendi/Booker* error, they "preserved" their *Apprendi/Booker* objection such that our review now must be for harmless error. This argument, as already noted, holds no water, and it defies the majority's own logic. As the majority points out, an objection based on *Apprendi* is tantamount to making a *Booker* objection. *See United States v. Sullivan*, ___ F.3d ___, No. 03-4601 (4th Cir. July 11, 2006) (King, J., concurring and writing for the court on this issue). This equivalence necessarily means that the defendants have never raised a "new" error that might be amenable to harmless error review.

Not only is the majority's recognition of a "new" error inconsistent with the observations made in *Sullivan*, the majority's foundational

assumptions fail to recognize the nature of the *Apprendi/Booker* error. At its core, the *Apprendi/Booker* error is grounded on the failure to submit to the jury for factfinding evidence that theretofore had been considered sentencing facts subject to the court's factfinding. Only a new trial could provide the government with the opportunity to present such facts to the jury.

Thus, at the 2003 resentencing, the fact remained that the government had not been given the opportunity to present evidence of drug quantities to the jury. The 2003 resentencing proceeding was only an effort to work around this still-persistent Sixth Amendment failure through application of doctrines that might avoid the need of a new trial. Thus, the trial court applied the principle that because the evidence of drug quantity was uncontroverted and overwhelming, factfinding by the court and not the jury did not affect substantial rights.

As we now again send this case back to the district court for resentencing under *Booker*-specific principles, the court will again determine sentencing facts, but now under a non-mandatory sentencing structure that avoids the *Apprendi/Booker* error. Even now, however, the 1999 *Apprendi/Booker* error persists, in that the jury was never given the responsibility of finding sentencing facts. But *Booker* itself will now allow the district court to find sentencing facts as an act of discretion, not as a mandate, which had rendered its earlier factfinding unconstitutional.

At bottom, the district court's goal at the 2003 resentencing and now on remand will be to correct the 1999 *Apprendi/Booker* error that was forfeited but which we noticed on the first appeal. The defendants' repetition of their objection to this error — made on the first appeal; made again to the district court at the 2003 resentencing; and made again to us in the second appeal — does not make the error a new error. Repeating a same, late objection more than once does not make it any more timely. Or stated otherwise, the same error once forfeited cannot be converted to one preserved simply by repeating the objection.

While I thus disagree with the majority's application of harmless error at this stage of the proceedings, I agree that this case should be remanded for resentencing under our most recently announced juris-

prudence under *Booker. See, e.g.*, *United States v. Hughes*, 401 F.3d 540, 547-49 (4th Cir. 2005); *United States v. Green*, 436 F.3d 449, 455-56 (4th Cir. 2006); *United States v. Moreland*, 437 F.3d 424, 431-34 (4th Cir. 2006).