**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-4744**
_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

CHRISTOPHER WEAH BLIDEE,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Martin K. Reidinger, District Judge. (3:04-cr-00329-MR-DCK-2)

_____

Argued: September 23, 2011      Decided: October 31, 2011

_____

Before MOTZ, KEENAN, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judges Motz and Keenan joined.

_____

ARGUED: Erin Kimberly Taylor, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. ON BRIEF: Claire J. Rauscher, Executive Director, Ann L. Hester, Assistant Federal Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Christopher Weah Blidee challenges the district court's revocation of his supervised release. He argues that the district court failed to comply with due process when it ruled that he was in violation of the conditions of his supervised release. Alternatively, Blidee contests the reasonableness of the sentence imposed by the district court upon revocation. We conclude that the revocation hearing comported with due process and the sentence was not plainly unreasonable. Accordingly, we affirm the judgment of the district court.

I.

A.

A citizen of Liberia, Blidee entered the United States as a refugee in 1994. He subsequently adjusted his status to that of a lawful permanent resident. On December 15, 2004, a grand jury returned an indictment charging Blidee with several counts arising out of his participation in a scheme to defraud financial institutions. Pursuant to a pretrial agreement, Blidee pleaded guilty to one count of conspiracy to commit offenses against the United States, in violation of 18 U.S.C. §§ 513, 1028, 1029, 1343, and 1344. The district judge sentenced

2

Blidee to a 30-month term of imprisonment followed by 3 years of supervised release.

The district court entered judgment on April 19, 2006. It provided Blidee with binding conditions of supervised release. Two conditions are particularly relevant to this appeal. First, Blidee was ordered to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." J.A. 20. Second, the district court appended a special condition regarding Blidee's immigration status:

> In accordance with established procedures provided by the Immigration and Naturalization [sic] Act, . . . the defendant, upon release from imprisonment, is to be surrendered to a duly-authorized immigration official for deportation. As a further condition of supervised release, if ordered deported, the defendant shall remain outside the United States. Should deportation not occur, the defendant shall report within 72 hours of release from the custody of the Bureau of Prisons or the Immigrations [sic] and Customs Enforcement Agency to the probation office in the district to which defendant is released.

Id.

Soon after the entry of judgment, the U.S. Department of Homeland Security initiated removal proceedings against Blidee, charging that he was removable for having been convicted of an aggravated felony. Blidee was finally ordered removed to Liberia in 2008.

Blidee completed his term of imprisonment on August 1, 2008. He was released and immediately placed in the custody of

3

U.S. Immigration and Customs Enforcement ("ICE"), in accordance with the terms of his removal order. Over the next six months, ICE officials attempted to remove Blidee to Liberia. A variety of logistical impediments, owing mostly to the Liberian Embassy's intransigence, prevented successful removal. ICE agents ultimately concluded that Blidee's removal was not imminent, and they released him from custody on March 3, 2009. ICE agents also provided Blidee with an order of supervision upon his release from their custody, which ordered him to self-remove from the United States.

After his release from ICE custody, Blidee met with his probation officer, Timothy Goodman. Goodman reviewed Blidee's conditions of supervised release at their first meeting on March 10. Goodman stressed to Blidee that he must "stay in touch with ICE as they had directed him to and . . . compl[y] with any and all directives from the ICE officials." Id. 30. Goodman informed Blidee that he must follow both his instructions and the directives of ICE officials. As Goodman testified at the revocation hearing, "I made sure that [Blidee] understood from the moment he came to our office that my expectation of him was to comply with any and all directives and regulations of ICE." Id. 38. To that end, Goodman confirmed that Blidee understood that he must self-remove pursuant to ICE orders.

4

Over the next year, Blidee failed time and again to comply with ICE deadlines to self-remove. His supervising ICE detention and removal officer, Erin North, first ordered him to leave the United States no later than July 7. After he failed to self-remove, North instructed him to report to her on October 6 with tickets to depart the United States. Blidee met with her on October 6, but he failed to produce the tickets. North gave him another three months to leave the country, ordering him to finalize travel plans and meet with her on January 6, 2010. Blidee brought tickets for departure to Ghana to the January 6 meeting. He explained to North that, though a Liberian citizen, he spoke the language of Ghana and would be able to enter the country. North testified that Blidee's affirmation about his ability to enter Ghana satisfied ICE requirements, because countries often have arrangements allowing citizens reciprocal entry. North gave Blidee another extension, directing him to leave the country by March 31. Blidee was set for a March 29 departure from the United States to Ghana.

Blidee again failed to comply with ICE orders, refusing to follow through with the planned March 29 self-removal. He arrived at Goodman's office on March 29 and explained that he did not want to leave his wife and kids in the United States. Blidee then called North, first telling her that his flight had been canceled but later admitting that he had simply refused to

leave the United States. North informed Blidee that he had violated the conditions of his release from ICE custody. ICE would consider him a fugitive if he failed to leave the country within seven days.

Seven days passed, and Blidee remained in the United States. Blidee was now officially in violation of an ICE condition of supervision. Goodman reasoned that Blidee was similarly in violation of his instructions, because he had directed Blidee to comply with all ICE orders. Blidee was obligated to follow Goodman's instructions pursuant to the conditions of his supervised release, so Goodman now believed that Blidee had violated the terms of his supervised release.

On April 19, Goodman filed a Petition for Warrant for Offender Under Supervision, in which he sought revocation of Blidee's supervised release. Goodman wrote that Blidee had violated conditions mandating that he follow the instructions of his probation officer, tell the truth to his probation officer, and remain outside the United States if removed.[1] That same day, officers secured a warrant for Blidee's arrest for violating the conditions of his supervised release.

---

[1]At the revocation hearing, the government abandoned Goodman's position that Blidee had violated the condition directing him to remain outside the United States if removed.

B.

At the revocation hearing, Blidee argued that the district court lacked authority to revoke his supervised release. Because the conditions of supervised release failed to expressly require his self-removal, Blidee maintained that revoking his supervised release for failure to depart the United States would violate his due process rights.

Rejecting Blidee's contentions, the district court concluded that he had failed to follow the lawful instructions of his probation officer in violation of his conditions of supervised release. The district court reasoned that Goodman's authority "extend[ed] to the ministerial act of . . . ordering [Blidee] to follow all directives and orders of immigration authorities and abid[e] by all of such directives and orders." J.A. 125. When Blidee failed to heed Goodman's instructions to follow ICE orders to self-remove, he thus violated the conditions of his supervised release, stated the court. The conditions of supervised release plainly mandated Blidee's compliance with directions given by his probation officer, according to the district court, so Blidee had received adequate notice that failing to self-remove would violate the terms of his supervised release.

As an alternative basis for revocation, the district court credited Goodman's testimony that Blidee had violated the

7

condition requiring him to "answer truthfully all inquiries by the probation officer," id. 20. Goodman had ordered Blidee to present his passport and birth certificate to him. The court found that Blidee had lied to Goodman when he told him that he did not possess his original passport.

Having determined that Blidee had violated the conditions of supervised release, the district court turned to framing an appropriate sentence. The court first found that Blidee had committed a grade C violation, which did not mandate revocation of his supervised release. It further calculated a Guidelines range of 3-9 months' imprisonment, with a maximum term of 2 years. Blidee and the government agreed with these sentencing calculations.

After establishing the sentencing possibilities, the court heard argument from Blidee and the government. Blidee requested a below-Guidelines sentence of time served. Such a sentence was appropriate, argued Blidee, because he would be placed indefinitely in ICE custody upon his release from prison. According to Blidee, the prospect of ICE detention rendered an additional prison term superfluous.

The government countered that Blidee should receive a 9-month prison term, at the top of the Guidelines range. It reasoned that Blidee's actions had evinced a "deliberate effort . . . to subvert the laws of this country," and a 9-month

8

sentence would give him incentive to comply with future ICE directives. Id. 133.[2]

Noting that the case was difficult, the district court sympathized with Blidee's situation--"that you've gone through this trying to make the best decision that you can for your family and I believe you're sincere in doing that." Id. 135. "But in some respects," the court continued, "I feel that you've been somewhat misguided in making that decision because in choosing the path that you have, you have in some respects [flouted] the law, and that has consequences." Id. The court acknowledged that not all of the 18 U.S.C. § 3553(a) factors applied to revocation proceedings. It stressed that it must impose a sentence that comports with important interests in deterrence--one that deters both Blidee and other potential defendants from committing similar criminal conduct.

Declaring that Blidee had shown "a certain disregard for the law . . . that requires that I impose a sentence that sends that message [that will deter Blidee and others]," the court revoked his supervised release and sentenced him to 7 months' imprisonment followed by 29 months of supervised release. J.A.

---

[2]The government agreed to request a time-served sentence so long as Blidee stipulated to self-removing. If Blidee promised to purchase airline tickets within thirty days of the hearing and to depart the United States by July 31, the government agreed to release his ICE detainer and remove him from custody. Blidee refused this offer, however.

136. The court further ordered that Blidee be released to ICE custody for removal after the expiration of his sentence and that he comply with all future ICE directives, including mandates to self-remove.

Blidee now appeals both the revocation of his supervised release and the sentence.

## II.

Blidee first contends that the district court's revocation of his supervised release violated his right to due process. According to Blidee, the conditions of supervised release did not provide him with adequate notice that failing to follow ICE orders to self-remove would constitute a violation. He thus maintains that the district court's decision to revoke his supervised release, grounded in his failure to self-remove, deprived him of liberty in violation of the right to notice guaranteed by the Fifth Amendment's Due Process Clause.

Reviewing Blidee's due process claim de novo,[3] United States v. Legree, 205 F.3d 724, 729 (4th Cir. 2000), we find his

---

[3]The government challenges the propriety of de novo review. It argues that Blidee failed to raise a due process claim before the district court and insists that our review must be for plain error. We disagree. Blidee consistently maintained to the district court that he lacked adequate notice that failure to self-remove would expose him to possible revocation of his supervised release. This is sufficient to preserve his due (Continued)

10

argument unavailing. The conditions of supervised release plainly required Blidee to comply with the directions issued by his probation officer. When Goodman ordered him to follow ICE's mandate to self-remove, Blidee received adequate notice that his failure to depart the United States would render him in violation of the conditions of his supervised release. Revocation of Blidee's supervised release for failure to self-remove thus comported with due process.[4]

Defendants facing the prospect of supervised release revocation are afforded protections enshrined in the Due Process Clause. United States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992). As in other contexts, due process at the revocation stage ordinarily encompasses notice and an opportunity to be heard. Cf. Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008); see also Fed. R. Crim. P. 32.1(b). We have not had occasion to expound with precision the due process rights secured to defendants charged with violating their conditions of supervised release, but federal legislation illuminates the

process argument. See United States v. Robinson, 460 F.3d 550, 557 (4th Cir. 2006).

[4]Because we hold that Blidee violated his conditions of supervised release by failing to self-remove, we need not address the district court's alternative ruling that Blidee's misrepresentations about his passport status similarly authorized revocation.

11

inquiry. Congress has mandated that a probation officer "provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct." 18 U.S.C. § 3583(f).

We readily conclude that the district court afforded Blidee adequate notice that failure to follow ICE orders to self-remove would violate the conditions of his supervised release. The conditions mandated that Blidee "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." J.A. 20. At their very first meeting, Goodman ensured that Blidee understood that he must follow ICE directives to self-remove. Time and again, Goodman told Blidee that his "expectation of him was to comply with any and all directives and regulations of ICE." Id. 38. When Blidee failed finally to comply with ICE orders to self-remove by April 5, 2010, he necessarily neglected to follow Goodman's instructions. And because he failed to "follow the instructions of the probation officer," id. 20, Blidee violated the conditions of his supervised release. Revocation was therefore entirely appropriate and wholly consonant with our notions of due process.

The record belies Blidee's contentions that his immigration status is a matter wholly independent from his compliance with

12

the terms of supervised release. From the outset, Goodman plainly told Blidee that his obligations to ICE were subsumed under his conditions of supervised release. Indeed, even before Blidee was released from prison, the conditions of supervised release notified him that he must follow ICE orders. An additional condition was appended to Blidee's judgment, stating that, "upon release from imprisonment," he was "to be surrendered to a duly-authorized immigration official for deportation." Id. This condition moreover provided that, "if ordered deported, the defendant shall remain outside the United States." Id. From the date of judgment, then, Blidee was on notice that he must comply with ICE directives as a condition of his supervised release.[5]

---

[5]In addition to his due process argument, Blidee contends that the district court abused its discretion by finding his violations willful. Because he made a good-faith attempt to depart from the United States, Blidee insists that his failure to do so was not willful and cannot support a conclusion that he violated the conditions of his supervised release. Although endeavoring to meet an obligation of supervised release in good faith may be sufficient to resist revocation, at the very least it requires "earnestness and effort" to satisfy that condition. United States v. Taylor, 321 F.2d 339, 341–42 (4th Cir. 1963). Here, Blidee failed even to board the plane to Ghana, let alone seek entry to the country. A desire to stay with his family, not some external bar, precluded his departing the United States. This militates against a conclusion that he tried in good faith to secure his removal.

III.

Blidee next challenges the procedural reasonableness of the district court's sentence. He asserts that the district court erred by failing to address his argument for a time-served sentence. We find that the district court adequately responded to Blidee's request for a below-Guidelines sentence and affirm.

We have confirmed, post-Booker, that "revocation sentences should be reviewed to determine whether they are 'plainly unreasonable' with regard to those § 3553(a) factors applicable to supervised release revocation sentences." United States v. Crudup, 461 F.3d 433, 437 & n.6 (4th Cir. 2006). "In determining whether a sentence is plainly unreasonable, we first decide whether the sentence is unreasonable," generally using the same reasonableness determinations that we employ on direct review of an original postconviction sentence. Id. at 438–39. We are mindful, however, that not all of the § 3553(a) factors properly apply in the revocation context. Id. If a revocation sentence is not unreasonable, the inquiry ends there. Id. at 439. Only if we conclude that a revocation sentence is unreasonable need we evaluate whether it is plainly unreasonable, using the same standards that guide our plain-error analysis. Id.

" '[A] deferential appellate posture' " characterizes our review of revocation sentences. Id. (quoting United States v.

14

_Salinas_, 365 F.3d 582, 588 (7th Cir. 2004)). Indeed, the district court "need not be as detailed or specific when imposing a revocation sentence as it must be when imposing a post-conviction sentence." _United States v. Thompson_, 595 F.3d 544, 547 (4th Cir. 2010). At bottom, "[w]e may be hard-pressed to find any explanation for within-range, revocation sentences insufficient given the amount of deference we afford district courts when imposing these sentences." _Id._ Deference is not unlimited, however, and "a district court may not simply impose [a] sentence without giving _any_ indication of its reasons for doing so." _Id._ And as is the case at the initial postconviction sentencing proceeding, " '[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence' than that set forth in the advisory Guidelines, a district judge should address the party's arguments and 'explain why he has rejected those arguments.' " _United States v. Carter_, 564 F.3d 325, 328 (4th Cir. 2009) (quoting _Rita v. United States_, 551 U.S. 338, 357 (2007)). Context often clarifies a district court's reasons for rejecting a particular argument and imposing a certain sentence. _Thompson_, 595 F.3d at 547.

We conclude that the district court sufficiently responded to Blidee's request for a time-served sentence and the sentence imposed was not unreasonable. Blidee's request, grounded in his

15

contention that he would be detained by ICE even if released from incarceration, obligated the district court to respond. See Carter, 564 F.3d at 328. Though he did not expressly restate and reject Blidee's argument, the record demonstrates that the district judge considered the argument and found it unavailing. Blidee's request was premised on an asserted lack of distinction between his being held in prison custody and his being detained by ICE. The district judge disagreed, however, determining that incarceration provided a deterrent effect that ICE detention did not. He sought to craft a sentence that deterred both Blidee and other potential defendants from ignoring ICE directives. According to the district judge, Blidee had shown a "certain disregard for the law . . . that requires that I impose a sentence that sends that message [that will deter Blidee and others]." J.A. 136. The district court's emphasis on deterrence--that it is promoted to a greater extent by incarceration than through ICE detention--convinces us that he adequately considered and rejected Blidee's argument for a time-served sentence.

IV.

The revocation of Blidee's supervised release comported with due process. Moreover, the sentence imposed upon

16

revocation was not plainly unreasonable.  We therefore affirm the judgment of the district court.

AFFIRMED